FILED
CLERK, U.S. DISTRICT COURT
12/19/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: \_\_\_\_MMC\_\_\_\_ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>               v.<br><br>MATTHEW ARAGHI and<br>MICHAEL ARAGHI,<br><br>          Defendants. | CR No. 2:24-CR-00758-WLH<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 371: Conspiracy;<br>18 U.S.C. § 981(a)(1)(C) and<br>28 U.S.C. § 2461(c): Criminal<br>Forfeiture] |

The United States Attorney charges:

[18 U.S.C. § 371]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

Defendants and Relevant Entities and Individuals

1.   Defendants MATTHEW ARAGHI and MICHAEL ARAGHI were both doctors of chiropractic medicine ("chiropractors") licensed with the State of California and residents of Los Angeles County, California, within the Central District of California.

2.   Defendants MATTHEW ARAGHI and MICHAEL ARAGHI owned and operated LAX Physical Medicine, Inc. ("LAX Physical Medicine"), a

1  medical practice located at 9100 South Sepulveda Boulevard, Suite
2  104, Los Angeles, California 90045.
3        3.    Co-Conspirator 1 ("CC-1") was a doctor of podiatric
4  medicine licensed with the State of California and the owner and
5  operator of Company A.
6        4.    Company A was a health care provider that provided medical
7  procedures, including surgical procedures, located in Culver City,
8  California.
9        5.    Airport Healthcare Management, Inc. ("AHM") was a
10 corporation formed by defendant MICHAEL ARAGHI with the same address
11 as LAX Physical Medicine.
12       6.    Icon Healthcare Management & Consulting, Inc. ("Icon") was
13 a corporation formed and controlled by Co-Conspirator 2 ("CC-2") with
14 a listed address of 6565 Crescent Park West Apartment 121, Playa
15 Vista, California 90094.
16       7.    Clover Management Inc. ("Clover") was a corporation formed
17 and controlled by CC-2 with a listed address of 8938 South Sepulveda
18 Boulevard Suite 101-292, Los Angeles, California 90045.
19       <u>Out-of-Network Insurance Benefits</u>
20       8.    Company A accepted patients for out-of-network surgeries.
21 Out-of-network surgical facilities did not agree with insurance plans
22 and programs to accept set reimbursement rates for services provided
23 to covered patients.  In-network surgical facilities, by contrast,
24 were part of a plan's network of providers with whom the plan had
25 contractually negotiated the reimbursement rates it would pay,
26 usually at a significant discount.  As a result, facilities that
27 remained out-of-network were free to set their own prices for
28 services and were generally reimbursed at substantially higher rates

than in-network providers.

### Fiduciary Duties and the Chiropractor-Patient Relationship

9. A "fiduciary" obligation generally existed whenever one person -- a client -- placed special trust and confidence in another -- the fiduciary -- in reliance on the fiduciary to exercise his or her discretion and expertise with the utmost honesty and forthrightness in the interests of the client, such that the client could relax the care and vigilance she or he would ordinarily exercise, and the fiduciary knowingly accepted that special trust and confidence and thereafter undertook to act on behalf of the client based on such reliance.

10. Chiropractors owed a fiduciary duty to their patients, requiring chiropractors to act in the best interest of their patients, and not for their own professional, pecuniary, or personal gain. Chiropractors owed a duty of honest services to their patients which included the duty to provide conflict-free referrals to physicians. A patient's right to honest services from chiropractors included the right not to have chiropractor-fiduciaries accept bribes and kickbacks connected to the referrals provided to the patient.

B.  OBJECTS OF THE CONSPIRACY

11. Beginning on an unknown date, but no later than in or around March 2015, and continuing through at least in or around November 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendants MICHAEL ARAGHI and MATTHEW ARAGHI knowingly conspired with each other, CC-1, and CC-2, together with others known and unknown to the United States Attorney, to commit the following offenses against the United States:

    a.   honest services mail fraud, in violation of Title 18, United States Code, Sections 1341 and 1346, against the United States;

    b.   honest services wire fraud, in violation of Title 18, United States Code, Sections 1343 and 1346.

C. <u>THE MANNER AND MEANS OF THE CONSPIRACY</u>

12. The objects of the conspiracy were carried out, and to be carried out, in substance, as follows:

    a.   Defendants MATTHEW ARAGHI and MICHAEL ARAGHI accepted kickbacks and bribes from CC-1.

    b.   Influenced by the kickbacks and bribes from CC-1, defendants MATTHEW ARAGHI and MICHAEL ARAGHI would refer patients to physicians associated with Company A for medical and surgical consultations instead of other physicians not associated with Company A. Those consultations often resulted in surgeries (collectively, "Kickback-Tainted Surgeries").

    c.   In exchange for those referrals, defendants MATTHEW ARAGHI and MICHAEL ARAGHI would receive payments from CC-1 equating to approximately twenty-seven percent (27%) of the facility fee revenue generated from the insurance reimbursements on surgical cases performed at Company A for patients referred by defendants.

    d.   Company A would submit claims, by mail and electronically, to insurance plans and programs for out-of-network reimbursements related to the Kickback-Tainted Surgeries.

   e. To disguise and conceal the kickback and bribe payments, defendants MATTHEW ARAGHI and MICHAEL ARAGHI would ask CC-1 to make such payments to companies formed by CC-2, including Icon and Clover, which CC-1 would do.  Defendants MATTHEW ARAGHI and MICHAEL ARAGHI also requested and received kickback and bribe payments from CC-1 through AHM.

   f. Later, defendants MATTHEW ARAGHI and MICHAEL ARAGHI created a sham rental agreement between CC-1 and LAX Physical Medicine to falsely indicate that CC-1 was renting office space at LAX Physical Medicine.  This agreement was created to disguise kickbacks and bribes as rent payments paid by CC-1 to defendants MATTHEW ARAGHI and MICHAEL ARAGHI.

   g. In receiving concealed bribes and kickbacks to induce the referral of patients to physicians associated with Company A, defendants MATTHEW ARAGHI and MICHAEL ARAGHI would deprive their patients of their right to honest services.

   h. As defendants MATTHEW ARAGHI and MICHAEL ARAGHI and CC-1 knew and intended, and as was reasonably foreseeable to them, in using the mails and wire communications in interstate commerce to (i) submit out-of-network claims to insurers for Kickback-Tainted Surgeries, and (ii) obtain payment from such insurers for the Kickback-Tainted Surgeries, defendants MATTHEW ARAGHI and MICHAEL ARAGHI would receive the payment of kickbacks and bribes that were material to patients.

  13. Defendants MATTHEW ARAGHI and MICHAEL ARAGHI received at least approximately $524,800 in kickback and bribe payments from CC-1 in exchange for referring patients to CC-1.

D.  OVERT ACTS

14.  In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendants MATTHEW ARAGHI and MICHAEL ARAGHI, CC-1, and CC-2, together with others known and unknown to the United States Attorney, committed and willfully caused others to commit the following overt acts, among others, in Los Angeles County, within the Central District of California, and elsewhere:

Overt Act No. 1:  On or about May 1, 2016, defendants MATTHEW ARAGHI and MICHAEL ARAGHI caused Company A to issue check number 3607 in the amount of $2,000 to AHM.

Overt Act No. 2:  On or about April 4, 2017, defendants MATTHEW ARAGHI and MICHAEL ARAGHI caused Company A to issue check number 1494 in the amount of $5,000 to Icon.

Overt Act No. 3:  On or about November 7, 2019, defendants MATTHEW ARAGHI and MICHAEL ARAGHI caused Company A to issue check number 152 in the amount of $5,000 to AHM.

Overt Act No. 4:  On or about November 7, 2019, defendants MATTHEW ARAGHI and MICHAEL ARAGHI caused check number 152 from Company A to be deposited into AHM's bank account.

Overt Act No. 5:  On or about November 21, 2019, defendants MATTHEW ARAGHI and MICHAEL ARAGHI caused Company A to issue six checks numbered 157 through 162 to AHM, in the amount of $5,000 each.

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

15. Pursuant to Rule 32.2(a), Fed. R. Crim. P., notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offense set forth in this Information.

16. Any defendant so convicted shall forfeit to the United States the following property:

   a. all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offense; and

   b. to the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph a.

17. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as a result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been

//

//

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

E. MARTIN ESTRADA
United States Attorney

*/s/ Lindsey Greer Dotson*

LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division

KRISTEN A. WILLIAMS
Assistant United States Attorney
Chief, Major Frauds Section

ROGER A. HSIEH
Assistant United States Attorney
Deputy Chief, Major Frauds Section